775 So.2d 753 (2000)
Willie Gene CARROLL, as administrator of the estate of Mildred K. Harris, deceased
v.
SHONEY'S, INC., d/b/a Captain D's Restaurant.
1981175.
Supreme Court of Alabama.
March 3, 2000.
Dissenting Opinion Modified on Denial of Rehearing May 12, 2000.
*754 Stephen M. NeSmith of Riggs & NeSmith, P.A., Montgomery, for appellant.
Charles A. Stewart III, Patrick L.W. Sefton, and Brian P. Strength of Sirote & Permutt, P.C., Montgomery, for appellee.
MADDOX, Justice.
Willie Gene Carroll, as administrator of the estate of Mildred K. Harris, deceased, filed a wrongful-death action against Shoney's Inc., d/b/a Captain D's Restaurant (hereinafter "Captain D's"), and Ronnie Harris, Mildred Harris's husband. Willie Gene Carroll is Mildred Harris's father. The trial judge dismissed the claim against Ronnie Harris, and entered a summary judgment for Captain D's.
Ms. Harris, an employee of Captain D's, died as a result of a gunshot wound inflicted by Ronnie Harris while she was working at the Captain D's restaurant. The legal issue presented is whether Captain D's can be held liable for Ms. Harris's death, which resulted from a criminal act of a third partyher husband. The trial judge ruled that it could not, and entered a summary judgment in favor of Captain D's. Carroll appeals from that summary judgment, arguing that in a similar case this Court held that these facts present a jury question. After thoroughly reviewing the record and the applicable law, we hold that the trial judge properly entered the summary judgment in favor of Captain D's; consequently, we affirm.

Facts
The facts, viewed in the light most favorable to Carroll, as the nonmovant, suggest the following: On the evening of September 22, 1995, Mildred Harris was working at Captain D's. Adrian Edwards, the relief manager, was also working that evening. Ms. Harris told Edwards that, the night before, her husband, Ronnie Harris, had beaten and choked her and that he had threatened her. Ms. Harris told Edwards that she was afraid of Ronnie Harris and that she did not want to talk to him. Ms. Harris asked Edwards to telephone the police if Ronnie Harris appeared at the restaurant that evening.
Around 10 o'clock that evening, while Ms. Harris was working in the rear of the restaurant, Ronnie Harris came in. He pushed his way past Edwards and went to the back of the restaurant, where he confronted Ms. Harris. He told Ms. Harris that he was going to "get her." Edwards and another employee repeatedly told Ronnie Harris to leave, but he continued yelling at Ms. Harris. Edwards telephoned the police; the officer who responded to the call escorted Ronnie Harris from the restaurant. The police detained him briefly; they released him after learning that Captain D's was not going to press charges. Evidence was presented indicating that after that confrontation Ms. Harris asked employees of Captain D's to help her hide from her husband; there was evidence indicating that she was taken to a motel in Montgomery and that her fellow employees lent her enough money to pay for the motel room.
The next day, September 23, 1995, Edwards reported for work and told the restaurant manager, Rhonda Jones, about the incident that had occurred the night before, i.e., that Ronnie Harris had threatened Ms. Harris, and that the police had to be called to remove Ronnie Harris from the restaurant. Edwards also told Jones *755 that Ms. Harris had said that she was afraid to return to work. At some point after the conversation, Ms. Harris telephoned Jones and asked to be excused from work that evening. Ms. Harris told Jones that she and her husband had been fighting and that she was afraid of him. Jones told Ms. Harris to come into work; and she also told Ms. Harris that if Ronnie Harris showed up, she would telephone the police. Ms. Harris went to work that evening, and was working at the front counter. At some point during her shift, Ronnie Harris walked into the restaurant, pulled out a pistol, and shot Ms. Harris in the back of the head. Ms. Harris died as a result of the gunshot wound.

I.
A summary judgment is appropriate when there is no genuine issue of material fact and the nonmovant is entitled to a judgment as a matter of law. Rule 56, Ala. R. Civ. P. When reviewing a ruling on a motion for a summary judgment, this Court uses the same standard of review the trial court used "in determining whether the evidence before the court made out a genuine issue of material fact." Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988). When a party moving for a summary judgment makes a prima facie showing that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). Substantial evidence is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871 (Ala.1989). In reviewing a ruling on a motion for a summary judgment, this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Renfro v. Georgia Power Co., 604 So.2d 408, 411 (Ala.1992).

II.
The general rule is that an employer is not liable to its employees for criminal acts committed by third persons against an employee. Gaskin v. Republic Steel Corp., 420 So.2d 37 (Ala.1982). Carroll contends, however, that this case falls within an exception to that rule, i.e., when a special relationship or special circumstances create a duty to protect an invitee or an employee from the criminal acts of a third party. Such a duty arises where the criminal conduct was foreseeable. Moye v. A.G. Gaston Motels, Inc., 499 So.2d 1368, 1371 (Ala.1986). The plaintiff argues that the facts of this case are "strikingly" similar to the facts set out in Thetford v. City of Clanton, 605 So.2d 835, 841 (Ala.1992). In Thetford, the trial court entered a summary judgment for the defendants in a wrongful-death action. In that case, the wife, after telephoning the sheriffs department because her husband had allegedly abused her, checked into a Holiday Inn motel, under a fictitious name. She requested that her husband not be allowed to enter her room. Two days later, her husband arrived and asked the manager to let him into her room. The manager used his pass key to open the door and then cut the chain off the door to admit the husband. The wife was beaten to death several hours later at a different motel. A majority of this Court reversed the summary judgment for Holiday Inn and the manager, holding that foreseeability of harm was a jury question based on the facts of that case.[1] Carroll contends that, *756 in light of the circumstances and the relationship that existed between Captain D's and its employee Mildred Harris the exception to the general rule is applicable. Carroll argues that he presented substantial evidence in opposition to the motion for summary judgment creating a genuine issue of material fact as to whether the fatal shooting of Mildred Harris by her husband was foreseeable. We disagree.

III.
It is well settled that absent a special relationship or special circumstances a person has no duty to protect another from criminal acts of a third person. See Ex parte McRae's of Alabama, Inc., 703 So.2d 351 (Ala.1997), and the cases cited therein, where the Court noted: "`[T]he general rule in Alabama [is] that absent special relationships or circumstances, a person has no duty to protect another from criminal acts of a third person.'" 703 So.2d at 351 (quoting Moye, 499 So.2d at 1370). See, also, Broadus v. Chevron USA, Inc., 677 So.2d 199 (Ala.1996); and Steiger v. Huntsville City Bd. of Educ., 653 So.2d 975 (Ala.1995).
We recognize, of course, that this Court has held that "[t]here is a singular exception to this general rule, which arises where `the particular criminal conduct was foreseeable.'" Moye, 499 So.2d at 1371, quoting Henley v. Pizitz Realty Co., 456 So.2d 272, 276 (Ala.1984). This Court has also recognized that this exception can apply to employers in certain circumstances. See Parham v. Taylor, 402 So.2d 884, 885 (Ala.1981) ("[I]n certain circumstances an employer may have a civil liability to his employees for the criminal acts of third persons: ... [H]owever ... `employers should not be saddled with such liability except in the most extraordinary and highly unusual circumstances.'" 402 So.2d at 886, quoting Thoni Oil Magic Benzol Gas Stations, Inc. v. Johnson, 488 S.W.2d 355 (Ky.1972)). Parham involved an action by a convenience-store clerk who had been shot during a robbery at the store, at which previous robberies had occurred.
We believe that Carroll has failed to show how this case falls outside the general rule that a person has no duty to protect another from criminal acts of a third person.[2] Alabama law requires a plaintiff to show three elements to establish a duty that would be the basis for a cause of action such as the one presented in this case. Moye, 499 So.2d at 1370. First, the particular criminal conduct must have been foreseeable. Second, the defendant must have possessed "specialized knowledge" of the criminal activity. Third, the criminal conduct must have been a probability.[3]
*757 Viewing the facts most favorably to Carroll, as we are required to do, and applying the law to those facts, we conclude that the plaintiff has not presented evidence creating a genuine issue of material fact as to Captain D's liability. The particular criminal conduct in this case was a murder. Unlike Hail v. Regency Terrace Owners Ass'n, [Ms. 1981397, December 22, 1999] ___ So.2d ___ (Ala.1999)(see note 1, supra), there was no evidence in this case that any employee of Captain D's was told, or should have reasonably foreseen, that Ronnie Harris would enter the Captain D's restaurant and murder his wife. Admittedly, there was evidence that Mildred Harris and her husband had been fighting, and that she had requested permission to be away from work for that reason, but the evidence also indicated that she had made similar requests on other occasions for the same reason. During his deposition, Carroll, who is Mildred Harris's father, admitted that he had no reason to think that Ronnie Harris would shoot Mildred Harris.[4] Based on the foregoing, we fail to see how Captain D's can be held responsible for Ms. Harris's death. Consequently, we affirm the judgment of the trial court.
Captain D's filed a motion in this Court to strike various affidavits and records submitted by Carroll. In view of our holding, this issue is moot. We therefore deny the motion.
MOTION TO STRIKE DENIED; AFFIRMED.
HOOPER, C.J., and HOUSTON, SEE, LYONS, BROWN, and ENGLAND, JJ., concur.
JOHNSTONE, J., dissents.
JOHNSTONE, Justice (dissenting).
The crucial issue is not whether the murder was foreseeable, but whether violence and injury, fatal or not, were foreseeable. Had the husband slapped the deceased, would anyone say the slapping was not foreseeable? If he had blackened her eye or broken her nose or knocked her teeth down her throat, would anyone say any of these batterings was not foreseeable? Is the defendant less liable because the husband killed her? "[A plaintiff] is not required to prove `that the particular consequence should have been anticipated, but rather that some general harm or consequence could have been anticipated.'" Hail v. Regency Terrace Owners Ass'n, [Ms. 1981397, December 22, 1999] ___ So.2d ___, ___ (Ala.1999), quoting Thetford v. City of Clanton, 605 So.2d 835, 840 (Ala.1992).
On the day of the killing, the defendant's manager Rhonda Jones was, at all pertinent times, acting within the line and scope of her agency for the defendant itself. Jones was informed of the decedent's husband's angry trespass into the back of the restaurant and angry threat against the deceased during the preceding night. Jones was informed that the incident was so bad the restaurant personnel needed to call the police in order to remove the husband. Jones was informed that the *758 deceased had told her co-workers that her husband had beaten her two days earlier and that she thought that he would kill her. Nonetheless, Jones refused the deceased's plea to be excused from work, ordered the deceased to report to work, and promised to protect the deceased at work. Jones then assigned the deceased to work at the counter, where she was more exposed to violence from her husband than she would have been on virtually any other assignment within the restaurant. The husband's injuring the deceased was not just foreseeable[5] but was expectable.
The main opinion, citing Moye v. A.G. Gaston Motels, Inc., 499 So.2d 1368 (Ala. 1986), observes:
"Alabama law requires a plaintiff to show three elements to establish a duty that would be the basis for a cause of action such as the one as presented in this case. Moye, 499 So.2d at 1370. First, the particular criminal conduct must have been foreseeable. Second, the defendant must have possessed `specialized knowledge' of the criminal activity. Third, the criminal conduct must have been a probability."
775 So.2d 756. All three elements are abundantly present in the case before us. As already discussed, violence by the husband was so obviously foreseeable that the manager of the restaurant expressly promised to protect the deceased from the husband. Second, the manager had specialized knowledge of the husband's trespass, abuse, and threat the preceding night, the battery he had committed on the deceased two days earlier, and the deceased's perception of the danger he posed. Third, the husband's criminal conduct was a probability if not a certainty: the night before, he had pushed his way past a restaurant employee and trespassed into the back of the store in order to threaten the deceased that he was going to "get her."
To absolve the defendant of liability, the main opinion cites the rationale of Moye, supra, "that crime can and does occur despite society's best efforts to prevent it." 775 So.2d at 756 (n. 3). Society did not exert its best efforts to prevent the crime committed on the deceased in the case before us. Rather the defendant, through its managerial personnel, demonstrated a preoccupation with the logistics of fast food and an irresponsible disregard for the notorious dangers of spouse abuse and the public policy of this state, expressed in a number of recent statutes,[6] against spouse abuse.
Foreseeability is a matter of common sense. The decision of this Court in this case will send a message whether we think common sense entails recognizing the danger, of demonstrated spouse abuse.

On Application for Rehearing
MADDOX, Justice.
APPLICATION OVERRULED.
HOOPER, C.J., and HOUSTON, SEE, LYONS, BROWN, and ENGLAND, JJ., concur.
JOHNSTONE, J., dissents, and modifies his March 3, 2000, dissenting opinion.
NOTES
[1] Recently, this Court addressed an issue similar to the issue presented in this case in Hail v. Regency Terrace Owners Ass'n, [Ms. 1981397, December 22, 1999] ___ So.2d ___ (Ala.1999). In Hail, the plaintiff, after her husband was killed in a fire in their apartment building, filed a wrongful-death action based on premises liability against the owner of the apartment complex. In the 13 months preceding the fire that killed Mr. Hail, there had been 8 to 13 fires in the same building the Hails lived in. All of those fires were suspected arson fires. This Court held that, based on the facts and circumstances of that case, the trial court erred in entering a summary judgment for the apartment complex owner. This Court concluded that the evidence in that case, although it did not establish that the plaintiff was entitled to a judgment against the apartment complex owners, did present a jury question on the issue of foreseeability. We believe that the facts in Hail, like those in Thetford, are distinguishable from those presented in this case.
[2] In Moye, 499 So.2d at 1370, this Court stated that it has "consistently and vigorously affirmed summary judgments in favor of the defendant premises owner/employer on the issue of whether the defendant was negligent in failing to protect its invitee/employee from such crimes."
[3] "It is [the] recognition of the harsh reality that crime can and does occur despite society's best efforts to prevent it that explains this Court's requirement that the particular conduct be foreseeable and that the defendant have `specialized knowledge' that criminal activity which could endanger an invitee was a probability." Moye, 499 So.2d at 1372. Cf. Guerrero v. Memorial Medical Center of East Texas, 938 S.W.2d 789 (Tex.App.1997). In Guerrero, a woman was killed by her estranged husband while she was at work. The facts of that case are similar to the facts here: The husband came to the employer's premises, took the victim by the arm, and tried to get her to leave with him. The supervisor reported the incident to security, and the security officer ordered the husband to leave the premises. The following day, the wife telephoned her supervisor and requested that the supervisor meet her in the parking lot, because she was afraid her husband would be waiting for her. The supervisor asked security to escort the wife into the building, which it did. About two hours later, one of the officers saw the husband, took him by the arm, told him to leave the premises, and threatened to file criminal trespass charges against him if he refused. Within 20 minutes the husband returned and shot and killed the wife on the employer's premises. The trial court entered a summary judgment for the employer, and the appellate court affirmed, holding that the husband's criminal act was not foreseeable and that the employer had no duty to protect the wife from her husband.
[4] Carroll's deposition (C. 117-18) shows the following exchange:

"Q. Before Mildred Harris was killed, did you have any reason to think that Ronnie Harris was going to take a gun and shoot your daughter?
"A. No. I didn't."
[5] To resolve the common-sense issue of foreseeability, this Court need not resort to the intermediate appellate courts of Texas for guidance, as the main opinion does in citing Guerrero v. Memorial Medical Center of East Texas, 938 S.W.2d 789 (Tex.App.1997). Even if foreseeability were such an odd and abstruse concept that we needed such guidance, Guerrero is distinguishable on its facts.
[6] See, e.g., Crime Victims' Rights Act, §§ 15-23-60 through-84, Ala.Code 1975; Custody and Domestic or Family Abuse Act, §§ 30-3-130 through -136, Ala.Code 1975; Domestic Violence Facilities Act, §§ 30-6-1 through - 11, Ala.Code 1975; Protection From Abuse Act, §§ 30-5-1 through -11, Ala.Code 1975; Stalking, §§ 13A-6-90 and -91, Ala.Code 1975. See also § 30-2-52, Ala.Code 1975.